# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| GUY KEVIN AASEBY,<br><br>       Plaintiff,<br><br>v.<br><br>CITY OF COEUR D' ALENE POLICE CHIEF WAYNE LONGO, CITY OF COEUR D' ALENE, COEUR D' ALENE POLICE DEPARTMENT, OFFICER ANDREW STERLING, OFFICER MARIO RIOS JR., OFFICER JOHN KELLY, OFFICER TIMOTHY NEAL, OFFICER DAN O' DELL, JOHN DOES 1-10, JANE DOES 1-10.<br><br>       Defendants. | CIVIL ACTION  NO: CV-09-0051-EJL<br><br><br>**MEMORANDUM ORDER** |

## INTRODUCTION

Pending before the Court in the above-entitled matter is Defendants City of Coeur d'Alene Police Chief Wayne Longo, City of Coeur d'Alene, Officer Andrew Sterling, Officer Mario Rios Jr., Officer John Kelly, Officer Timothy Neal and Officer Dan O'Dell's Motion for Summary Judgment. (Collectively referred to as "Defendants") (Mot. for Summ. J., Dkt. 18.) The motion is made pursuant to Federal Rule of Civil Procedure 56. The matter is ripe for the Court's consideration. Having fully reviewed the record herein, the Court finds that the facts and legal arguments are adequately represented in the briefs and record. Accordingly, and in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this motion shall be decided on the record before this Court without oral argument.

## FACTUAL AND PROCEDUAL BACKGROUND

The complaint in this action alleges violations of 42 U.S.C. § 1983 in connection with two arrests and the prosecution of Guy Kevin Aaseby ("Aaseby") by the Defendant City of Coeur d'Alene. It is uncontested that on February 15, 2008, Aaseby contacted the Coeur d'Alene Police Department to report that Miranda Medici (Medici) had been harassing him and had threatened to kill him with a gun if he contacted her again. (Guy Kevin Aaseby Affidavit at 4 ¶ 10-11, Dkt. 23.) In response to the complaint Defendant Officer Sterling responded and questioned the Plaintiff about the incident. Plaintiff contends that Medici had been seeking a relationship with him for about two years and that she had continuously driven by his apartment and had left a note indicating that she was willing to break up with her fiancée in order to be with Aaseby. *Id.* at 3-4. Medici and other witnesses including the manager at the store where she worked and her friends contend the opposite; that it was Aaseby who had been seeking a relationship with her, who had frequented her place of work, called her, and gone past her home and her friend's home. (Def.'s Statement of Undisputed Material Facts at 2-3, Dkt. 18-2.) Officer Sterling first heard Aaseby's version of events and discovered Medici's version through subsequent investigation. Medici admitted to making the threat against Aaseby to Officer Sterling, but said that she did so because in a call the previous day (Valentine's Day) Aaseby had responded to Medici's request to leave her alone by replying "Oh, honey, I've seen you coming out of places" which made her afraid for her safety. *Id.* at 4.

On February 21, 2008 Defendant Officers Sterling and Rios went to Aaseby's apartment. What transpired is disputed. Aaseby contends that the officers mocked him, his physical appearance and his disabilities. (Aaseby Aff. at 5 ¶ 14.) Defendants contend that Aaseby told them that he was in love with Medici and she had engaged in behavior intended to make him notice her. (Defendant's Statement at 6.) The result of the meeting was that Aaseby was arrested for stalking in

the second degree. When he was being apprehended Aaseby contends that Defendant Officers put the handcuffs on his left arm too tight. Aaseby alleges that as a result of a car accident in 2002 where his shoulder was dislocated and his neck broken, the range of motion in his left arm was severely and painfully restricted. Aaseby alleges that he informed the officers that the way they were applying the handcuffs was uncomfortable and painful. (Randall R. Adams Affidavit Ex. D at 53, Dkt. 18-3.) Aaseby contends that the more he suffered the more the arresting officers liked it. *Id.* Aaseby was released on February 22, 2008 and a No Contact Order was issued for Medici. *Id.* at Ex. B.

On April 26, 2008 Medici contacted Defendant Officer Kelly and reported that her friend (Veien) had told her that Aaseby had driven past her house and shouted "You tell her I'll have her one way or another. You tell her that." (Defendant's Statement at 7 ¶ 32.) Defendant Officer Kelly confirmed Medici's statement with Veien and contacted Defendant Officer Neal and instructed him to arrest Aaseby for violation of the No Contact Order. *Id.* at 7 ¶ 33. Aaseby was arrested. Aaseby alleges that he had an alibi for the violation and that his protests were ignored at the time of arrest. (Aaseby Aff. at 6.) Aaseby makes the same allegations concerning the force used in the second arrest as the first. (Adams Aff., Ex. D, Dkt. 18-3 at 68.) Aaseby was found "not guilty" of both charges.

On February 9, 2009 Aaseby filed this complaint in the United States District Court for the District of Idaho. Aaseby alleges four counts:

Count I: 42 U.S.C. § 1983 Action for Deprivation of Civil Rights, which alleges that Aaseby was arrested without probable cause, that he was maliciously prosecuted and that the force used incident to the arrest was excessive.

Count II: 42 U.S.C. § 1985 Action for Conspiracy to Interfere with Civil Rights, which alleges that there was a conspiracy among the Defendants to deprive Aaseby of his constitutional rights.

(There is no Count III)

Count IV: 42 U.S.C. § 1983 Failure to Adequately Train & Supervise Police Officers, which alleges that the City of Coeur d'Alene is liable for the actions of its officers.

Count V: 42 U.S.C. § 1983 Negligent Hiring, Retention and Failure to Discipline or Take Necessary Corrective Action, which alleges the same as Count IV.

On January 19, 2010 the Defendants filed a Motion for Summary Judgment on all counts. (Motion for Summary Judgment.)

## STANDARD OF REVIEW

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

The Supreme Court has made it clear that under Rule 56 summary judgment is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element which is essential to the non-moving party's case and upon which the non-moving party will bear the burden of proof at trial. *See, Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the non-moving party fails to make such a showing on any essential element, "there can be no 'genuine issue of material fact,' since a completely failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.[1]

---

[1] *See also,* Rule 56(3) which provides, in part:

Moreover, under Rule 56, it is clear that an issue, in order to preclude entry of summary judgment, must be both "material" and "genuine." An issue is "material" if it affects the outcome of the litigation. An issue, before it may be considered "genuine," must be established by "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Hahn v. Sargent*, 523 F.3d 461, 464 (1st Cir. 1975) (quoting *First Nat'l Bank v. Cities Serv. Co. Inc.*, 391 U.S. 253, 289 (1968)). The Ninth Circuit cases are in accord. *See, e.g., British Motor Car Distrib. V. San Francisco Automotive Indus. Welfare Fund*, 883 F.2d 371 (9th Cir. 1989).

According to the Ninth Circuit, in order to withstand a motion for summary judgment, a party

> (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

*Id.* at 374 (citation omitted).

Of course, when applying the above standard, the court must view all of the evidence in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *Hughes v. United States*, 953 F.2d 531, 541 (9th Cir. 1992).

---

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

**DISCUSSION**

**1. Count I 42 U.S.C. § 1983 Claims**

Congress has created a cause of action against private individuals who, while acting under color of law, violate the constitutional rights of private citizens. 42 U.S.C. § 1983 provides in pertinent part:

> Every person who, under color of any statute, […] subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivations of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured.

*Id.* In order for a plaintiff to prevail on a § 1983 claim they must show that (1) the actor that deprived them of their rights acted under color of law and (2) that the action actually deprived them of a constitutional right. In this case (1) is not disputed by either of the parties. Police officers carrying out their duties act under color of law. Aaseby contends that the constitutional rights which were violated in this case are the right to be free from unlawful arrest, malicious prosecution and excessive force incident to arrest.

While § 1983 provides a cause of action against police officers for constitutional violations that they might have committed, they are also entitled to qualified immunity from § 1983 claims. Qualified immunity operates to "shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with law." *Pearson v. Callahan*, 129 S.Ct. 808 (2009). The court in *Pearson* rejected the mandatory two-step approach that it had announced in *Saucier v. Katz*, 533 U.S. 194 (2001). *Id.* at 818. That approach had required courts to first decide if the defendant's "conduct violated a constitutional right" then decide whether the right was clearly established at the time of the alleged violation. *Saucier*, 533 U.S. at 201. Courts are now free to decide either question in whatever order is most appropriate given the circumstances. The Court is satisfied that the rights Aaseby claims were violated are guaranteed by the federal Constitution. Any reasonable government actor would have shaped their conduct to preserve them. What is at issue is whether

they were violated. Whether the rights were violated, and thus whether the officers were entitled to qualified immunity, is an appropriate question for summary judgment since the doctrine, if applicable, confers immunity from the suit itself. *Pearson*, 129 S.Ct. at 815 (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).).

### A. Unlawful Arrest

An officer will not be held to have committed a violation of a defendant's Fourth Amendment right to be free from unlawful arrest if the arrest was carried out with probable cause. *Grant v. City of Long Beach*, 315 F.3d 1081, 1089 (9th Cir. 2002) ("Courts have long held that the Fourth Amendment requires probable cause before an officer may arrest an individual.") (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964). In order to assess whether probable cause exists a court must inquire "if 'at the moment the arrest was made . . . the facts and circumstances within [the officer's] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent man in believing' that the suspect had violated a criminal law." *Id.* at 1085 (quoting *Orin v. Barclay*, 272 F.2d 1207, 1218 (9th Cir. 2001).). The Ninth Circuit requires an objective standard whereby the district court is to evaluate whether "a 'reasonable officer'" would have made the arrest based on the totality of the circumstances." *Id.* at 1089. This is a fact specific inquiry. As required, the Court will view all evidence in the light most favorable to the plaintiff to determine if there is a genuine issue of material fact for trial.

### (1) Stalking in the Second Degree

Aaseby's first arrest was for stalking in the second degree. The Idaho Code defines, in pertinent part, stalking in the second degree as a person who:

> (1) –knowingly and maliciously:
>> (a) Engages in a course of conduct that seriously alarms, annoys or harasses the victim and is such as would cause a reasonable person substantial emotional distress.
>
> […]

(2)(a) "Course of conduct" means repeated acts of non-consensual contact involving the victim.
[…]
(2)(c) "Nonconsensual contact" means any contact with the victim that is initiated or continued without the victim's consent, that is beyond the scope of the consent provided by the victim or that is in disregard of the victim's expressed desire that the contact be avoided or discontinued. "Nonconsensual contact" includes, but is not limited to:
[…]
(ii) Contacting the victim in a public place or on private property;
(iii) Appearing at the workplace or residence of the victim;
[…]
(v) Contacting the victim by telephone or causing the victim's telephone to ring repeatedly or continuously regardless of whether a conversation ensues;

Idaho Code § 18-7906. In order for a valid arrest to be made an officer must have a reasonable belief that (1) the individual has contacted the victim, (2) these contacts be repeated and of the character described in the statute, (3) the contacts are non-consensual, (4) the contacts be made knowingly and maliciously, (5) the contacts seriously alarm, annoy or harass the victim, and (6) are such that a reasonable person would suffer substantial emotional distress. The proper frame of reference for this analysis is what was known by the officers at the time of arrest. Representations by witnesses, therefore, need not later be proved to be accurate so long as a reasonable officer would have given them credence at the time of arrest.

To show that there are no genuine material facts for trial Defendants offer the following evidence. Aaseby's contact with Medici is undisputed. Witnesses at the Safeway where Medici worked informed Officer Sterling that Aaseby had repeatedly contacted Medici over at least the course of a year. (Defendant's Statement at 3-4 ¶ 7.) Medici told Officer Sterling that Aaseby had come into the store, called her repeatedly, and left notes even after she had asked him to stop. *Id.* at ¶ 8-12. The repeated contacts caused Medici to fear for her personal safety, leading to her threat to kill Aaseby. *Id.* at ¶ 15. From this set of facts it would be reasonable for an officer to believe Aaseby knew he was acting against the wishes of Medici and given this conduct a reasonable person would have suffered emotional distress. Based on this set of evidence the Defendants have met their burden

in pointing out the lack of a genuine issue of material fact by showing, given the totality of the circumstances, that any reasonable officer would have taken the same action as Officer Sterling.

Aaseby responds by claiming the Defendant Officers did not have evidence of the specific intent (knowingly and maliciously) necessary for the crime and that there was no evidence that the contact was non-consensual. (Pls.' Brief in Opp. to Def.'s Mot. for Summ. J. at 4, Dkt. 21.) Aaseby misstates the standard for evaluating whether an arrest was made with probable cause. This Court is not re-litigating whether Aaseby is guilty of the crime. The Court's task is to determine if there is a genuine material fact with regards to what a reasonable officer would do considering the totality of the circumstances, not whether Aaseby actually committed the crime. Aaseby offers no genuine material facts that might contradict the Defendants' version of what Officer Sterling and Officer Rios knew at the time the arrest was carried out. Aaseby contends that the Defendants' version of events is not sufficient to show specific intent, but a reasonable officer could have concluded from statements of the witnesses that Aaseby knew he had been asked to stop and that he had continued regardless. The only evidence Aaseby offers is that the Defendant Officers did not give him a sufficient chance to refute the evidence against him and that the witnesses were biased against him. *Id.* at 3.

While police officers are allowed significant discretion in weighing the veracity of evidence offered by witnesses prior to making an arrest they do have a duty to "investigate into the basis of the witness' report." *Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1444 (9th Cir. 1991) (citing *Merriman v. Walton*, 856 F.2d 1333, 1335 (9th Cir. 1988).). In the *Merriman* case the defendant had been arrested for kidnapping even after police had received reports that the supposed victim had returned home and the she did not want to press charges. Similarly, in *Grant v. City of Long Beach*, 315 F.3d 1081 (9th Cir. 2002), the police relied on an inexperienced tracking dog and contradictory eye-witnesses, who had claimed to be able to identify the defendant after very brief exposure under

stressful circumstances, to arrest the defendant for nine rapes. The Ninth Circuit found that the police lacked probable cause in both cases. The instant case presents nothing so extreme, and in none of the prior cases did the Ninth Circuit find that the defendant's claims of innocence alone were sufficient to deprive the arresting officers of probable cause. Given the totality of the circumstances known to the officers at the time of the arrest, any reasonable officer could have concluded he had probable cause to arrest Aaseby for stalking in the second degree.

*(2) Violation of a No Contact Order*

After Aaseby was released following the first arrest a No Contact Order was issued. The No Contact Order:

> Orders the defendant to have no direct or indirect contact with the alleged victim, unless though an attorney. You may not harass, follow, contact, attempt to contact, communicate with (in any form or by any means including another person), or knowingly go or remain within 300 feet of the alleged victim's person, property, residence or school.

Adams Aff., Ex. C. The order was issued pursuant to Idaho Code § 18-920 which enforces the provisions of the order. Defendant Officers arrested Aaseby after being informed by Medici that her friend had been contacted by Aaseby and that he made threatening statements about her. Aaseby again contends in opposition that he was not allowed to provide exculpatory evidence on his behalf at the moment of arrest. (Plaintiff's Brief in Opposition at 6.)

The Court admittedly recognizes the potential, given the attenuated factual situation, for fraud in the chain of statements about the Plaintiff's conduct. The Court's task, however, is to evaluate the totality of the circumstances known to the arresting officers at the time of arrest given the requirements of the law. The No Contact Order provides that indirect contact with the victim through a third person shall be a violation. This is exactly the situation that was represented to the arresting officers. Given the nature of such an order it would be reasonable for an officer to disregard the statements of a defendant while making the arrest. The law cannot be read to provide

defendants a right requiring police officers to exhaust any alibi that the defendant might offer before they could take them into custody. Given that the totality of the circumstances shows that what was represented to the police was sufficient for a reasonable officer to conclude that a criminal act had been committed, the Court finds that there was probable cause for arresting Aaseby for violation of a no contact order.

## B. Malicious Prosecution

In order to prevail on a § 1983 malicious prosecution claim "a plaintiff "must show that the defendants prosecuted [him] with malice and without probable cause, and that they did so for the purpose of denying [him] equal protection or another specific constitutional right."" *Lassiter v. City of Bremerton*, 556 F.3d 1049, 1054 (9th Cir. 2009) (quoting *Freeman v. City of Santa Ana*, 68 F.3d 480, 489 (9th Cir. 1995) (alterations in original). Regardless of whether Aaseby alleges malice on the part of the Defendants or that the prosecution was for the purpose of denying him his constitutional rights the Court must address the threshold question of whether there was probable cause to initiate the prosecution. The Ninth Circuit has held that "probable cause is an absolute defense to malicious prosecution." *Id.* at 1054. It is not dispositive for probable cause that the prosecutions in question ended in Aaseby's favor. *Freeman*, 68 F.3d at 1189 ("[T]he mere fact a prosecution was unsuccessful does not mean it was not supported by probable cause."). In Idaho it is a question of law whether probable cause existed when the facts surrounding the investigation before filing and pursuing the lawsuit are undisputed. *Shannahan v. Gigray*, 962 P.2d 1046, 1051 (Idaho 1998).

While Aaseby disputes the reasons for the arrests by alleging discriminatory and harassing treatment, the actual circumstances of the arrests and the facts known to the officers at the time the arrests were made is not disputed. In *Lassiter* the Ninth Circuit found that a prosecutor relying on signed statements by police officers who had had probable cause to arrest the defendant was entitled

to qualified immunity because those signed statements created sufficient probable cause to initiate

the proceedings. *Lassiter*, 556 F.3d at 1054. Similarly, once the Court has found that the officers in

this case had probable cause to arrest Aaseby then it necessarily follows that a prosecution stemming

from those arrests has probable cause as well. Aaseby's argument explicitly relies on the arrests

which gave rise to the prosecution being unlawful. (Plaintiffs' Brief in Opposition at 7). Because the

Court has found probable cause for the arrests and prosecution it is not necessary to address the

other elements of a malicious prosecution action.

## C. Excessive Force

The appropriate area of inquiry for a claim of excessive force incident to an arrest is the

reasonableness test of the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 394 (1989). The

Supreme Court has directed the excessive force inquiry into "whether the officers' actions are

'objectively reasonable' in light of the facts and circumstances confronting them, without regard to

their underlying intent or motivation." *Id.* at 397. Therefore, while Aaseby might allege

discriminatory and harassing statements made towards him during arrest, these statements cannot

create a genuine issue of material fact since they are irrelevant to an objective evaluation of the force

that was used. When weighing an excessive force claim, summary judgment is appropriate if the

Court "concludes, after resolving all factual disputes in favor of the plaintiff, that the officer's use of

force was objectively reasonable under all circumstances." *Scott v. Henrich*, 39 F.3d 912, 915 (9th

Cir. 1994). Alternatively, "the court may make a determination as to reasonableness where, viewing

the evidence in the light most favorable to [the plaintiff], the evidence compels the conclusion that

[the officers'] use of force was reasonable." *Hopkins v. Andaya*, 958 F.3d 881, 885 (9th Cir. 1992).

The Court can therefore find summary judgment if the force the officers used was appropriate in any

circumstance, or if the circumstances in the specific case were such that the only conclusion is that

the force was reasonable. For the purposes of this section, the Defendant Officers are Sterling, Rios

and Neal because they are the only police officers who were involved in the physical arrest of Aaseby.

While considering this question the Court must be cognizant that "all determinations of unreasonable force "must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation."" *Henrich*, 39 F.3d at 914 (quoting *Graham*, 490 U.S. at 396-97). In addition, a plaintiff can succeed on an excessive force claim only if they have suffered some compensable injury as a result of their treatment. *Graham* 490 U.S. at 394. The question of qualified immunity "in excessive force cases is the same as the test on the merits." *Lalonde v. County of Riverside*, 204 F.3d 947, 959 (9th Cir. 2000) (citing *Katz v. United States*, 194 F.3d 962, 968 (9th Cir. 1999).

In the present case, Aaseby contends that the Defendant Officers used excessive force when handcuffing him. The *Graham* standard requires the Court to weigh the interests of the officers in enforcing the law and providing for their own safety against the individual's right to be free from intrusive and excessive force. *Graham*, 490 U.S. at 396. The Ninth Circuit cautions that because "such balancing nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom […] summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002) (citations omitted). Similarly, so-called "tight handcuff" cases are "usually fact specific and […] likely to turn on the credibility of the witnesses." *Lalonde*, 204 F.3d at 960.

The Ninth Circuit has been reluctant to grant summary judgment in cases involving allegations of police misconduct in handcuffing. In the *Lalonde,* case the plaintiff was taken to the ground with a knee planted in his back, sprayed with capsicum and handcuffed too tightly such that bruises resulted. *Id.* at 953. There the court examined the totality of the circumstances and

concluded that a reasonable jury could have concluded that the force used was excessive. In *Palmer v. Sanderson*, 9 F.3d 1433 (9th Cir. 1993), the court made the same determination where the plaintiff alleged only that the handcuffs were so tight that they caused bruises lasting for weeks. *Id.* at 1436. In *Hansen v. Black*, 885 F.2d 692 (9th Cir. 1989), the court found that where handcuffs were applied in an allegedly "abusive manner" where injuries like bruises were left behind summary judgment was not appropriate. *Id.* at 645. A common thread that runs through these cases is alleged notice to the police officers by the plaintiffs that the handcuffs were being applied too tightly. Because of these types of allegations the Ninth Circuit has been reluctant to uphold summary judgment on handcuffing claims.

Defendants in this case point out that the mere fact that an arrestee believes that the handcuffs are too tight does not constitute on its own excessive force. (Mem. in Supp. of Mot. for Summ. J. at 12, Dkt. 18-1.) Defendants also claim that the Aaseby did not complain at any time about any pain he was experiencing. (Mario Rios Affidavit at 5, Dkt. 18-7); (Timothy Neal Affidavit at 4, Dkt. 18-8.) It is undisputed by the parties that before the arrests Aaseby suffered injuries after a car accident that made movement of his left arm very difficult. In his deposition Aaseby stated that: "Every time that they went to lock my hands up behind my back, it was torture. And I told them that. They made the cuffs extra tight. And it looked like they weren't taking any – any mercy on any turns. The more I suffered, the better they liked it." (Adams Aff., Ex D, Dkt. 18-3.) Aaseby contends that during the arrest he told the officers "that this was uncomfortable, that this was more than uncomfortable, it was painful. My arm doesn't work that way. But they got it back there." *Id.* With regards to the second arrest, Aaseby stated that it was the "same way. Tight handcuffs. Jerked me all the way out to the car, thinking that it was funny." *Id.* Based on these statements a reasonable jury could conclude, based on the totality of the circumstances confronting the arresting officers, that having knowledge of Aaseby's disability and proceeding to handcuff him in even a standard manner

constituted excessive force. A reasonable jury could find that the nature of the crimes, stalking in the second degree and violation of a no-contact order, did not create a sufficient government interest that would allow Defendant Officers to apply the handcuffs in disregard of the painful restriction of motion in Aaseby's left arm. No party alleges that Aaseby resisted arrest. A reasonable jury could also find that given that there are two arrests in this case while Defendant Officers might not have known about Aaseby's disability in the first instance they were on notice of it by the second arrest.

The Court must view the facts in the light most favorable to the non-moving party. Aaseby's statements give rise to genuine issues of material fact for trial. If Aaseby's statements are credible then the Defendant Officers would not be entitled to qualified immunity because they were aware that the application of excessive force violates an arrestee's constitutional rights, and no reasonable officer would have applied such force in the circumstances Aaseby describes.

## II. Count II: 42 U.S.C. § 1985 Conspiracy Claims

Even if no violation of a plaintiff's constitutional rights can be shown Congress has created a cause of action to punish conspiracies to deprive those rights. The statute provides that there shall be liability where two or more persons conspire "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985 (3). There are multiple sections of § 1985 and Aaseby fails to specify which section his claim falls under. (3) is the most likely, however, since (1) is designed to allow government officers to perform their duties and (2) is designed to protect parties, witnesses and jurors from intimidation. Neither is at issue in this case. The Supreme Court has interpreted § 1985 such that "the language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirator's action." *Griffon v. Breckenridge*, 403 U.S. 88, 102 (1971). In their motion for summary judgment Defendants point out that Aaseby is

not a member of a protected class for the purposes of equal protection. Aaseby contends that there is discriminatory intent on the basis of his gender, his disability, and himself as a class of one.

Aaseby cites *Craig v. Boren*, 429 U.S. 190 (1976) and *Miss. Univ. for Women v. Hogan*, 458 U.S. 718 (1982), for the proposition that gender classifications must pass an intermediate scrutiny test in order to be constitutional. While this is certainly true, Aaseby has provided no evidence of a gender based classification. In those cases there were explicit statutory and policy based gender classifications against men. No such classifications appear or are alleged in this case. Both of the laws Aaseby was arrested under are neutral on their face, and Aaseby has provided no evidence or allegation beyond his own arrest that the statutes were applied with a disparate impact, or that such impact is a result of discriminatory intent as required to show a violation of equal protection. *Navarro v. Block*, 72 F.3d 712, 716 (9th Cir. 1995).

In order to refute the Defendants' assertion that he is not part of a protected class. Aaseby claims that because he is blind in one eye, among other disabilities which are not listed, he is disabled as defined by Title II of the Americans with Disabilities Act, and that the same act forbids discrimination on the basis of that disability. 42 U.S.C. § 12132. There is no known authority which recognizes that being disabled under the ADA creates the required membership in a constitutionally protected class, especially given that the ADA creates its own cause of action in the event of alleged discrimination on the basis of a recognized disability. Aaseby fails to provide any evidence beyond his own conclusory statements that any of the actions taken against him were because of his disabilities. Aaseby's only evidence of discriminatory intent are alleged discriminatory statements that officers made towards him at the time of arrest. Aaseby does not allege specific statements by the officers that pertain to his disability, only "snide comments and jokes." (Pl.'s Brief in Opp. at 4.) This alone is not sufficient to create a genuine issue of material fact for trial as again there is no evidence of a disparate impact of the enforcement of the laws against the class and no allegations in

the record of a discriminatory intent behind that impact beyond Aaseby's own conclusory statements.

Aaseby further contends that even if he is not found to be a member of a protected class that he may be found to be part of a class of one for the purposes of equal protection. This concept was recently recognized by the Supreme Court which found that "our cases have recognized successful equal protection claims brought by a "class of one," where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562 (2000) (citations omitted). The Ninth Circuit, however, has indicated that such actions are disfavored because they threaten to "provide a federal cause of action for review of almost every executive or administrative government decision." *Engquist v. Or. Dept. of Agric.*, 478 F.3d 985, 993 (9th Cir. 2007) (discussing a case alleging employment discrimination by the government). In this case, Aaseby has failed to provide any evidence that he has been treated differently from others who are similarly situated. The proper frame of reference for this question is to examine other individuals who have been arrested or accused of stalking or for violation of a no-contact order, not individuals with Aaseby's disabilities. Aaseby has shown no evidence of how others accused of stalking have been treated, and how his treatment differs from theirs. As such, Aaseby has not met his burden in establishing that he is a member of a class of one.

Because Aaseby cannot demonstrate as a matter of law that he is a member of any class protected by § 1985, there are no genuine issues of material fact for trial based on this claim and summary judgment should be granted.

**3. Counts IV and V: Municipal Liability**

Aaseby seeks damages against the Chief of Police Longo and the City of Coeur d'Alene. The Supreme Court has held in *Monell v. Dept. of Soc. Serv. of City of New York*, 436 U.S. 658

(1978) that "local governing bodies [...] can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where [...] the action that is alleged to be unconstitutional implements or executes a policy, statement, ordinance, regulation, or decisions officially adopted and promulgated by that body's officers." *Id.* at 690. The Court made clear that "a municipality cannot be held liable *solely* because it employs a tortfeasor." *Id.* at 691 (emphasis in original). The burden is on Aaseby to show a policy or custom on the part of the City of Coeur d'Alene, which can be proven by the municipality's negligence in training or failure to respond to constitutional violations. *Gilette v. Delmore*, 979 F.2d 1342, 1349 (9th Cir. 1992). The Defendants have appropriately pointed to a lack of such evidence.

Where there is no violation by a city's police officers, however, there can be no municipal liability. The Supreme Court has held that no principle "authorizes the award of damages against a municipal corporation when [...] the officer inflicted no constitutional harm." *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). This rule applies regardless of what the municipality's policies actually are. *Id.* ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point.") (emphasis in original). Because the Court has already concluded that no constitutional injury was suffered by Aaseby in connection with his claims for unlawful arrest and malicious prosecution, the Court need only decide if the municipality is subject to immunity for the excessive force claim.

For the purposes of this analysis Chief of Police Longo (in his official capacity) and the City of Coeur d'Alene will be treated as the same as both could be liable for enforcing a policy or custom that led to constitutional violations or for failing to properly respond to such violations including a lapse of training or deficient hiring practices.

### A. Municipal Custom or Policy

In order to hold a municipality liable Aaseby must show evidence "that a constitutional deprivation was directly caused by a municipal policy." *Nadell v. Las Vegas Metro. Police Dept.*, 268 F.3d 924, 929 (9th Cir. 2001) (citations omitted). Aaseby in this case has offered no evidence of such a policy beyond conclusory statements. Aaseby has produced no documents, statements or other records from the City of Coeur d'Alene or its police department to allege an official policy. Lacking such evidence, Aaseby can only deprive a municipality of its immunity from suit for the torts of its employees by showing that there was a custom with the force of policy to deprive them of their rights.

### B. Municipal Indifference

Even if, as here, a plaintiff cannot show evidence of a direct policy or a widespread custom a plaintiff "may attempt to prove the existence of a custom or informal policy with evidence of repeated constitutional violations for which the errant municipal officials were not discharged or reprimanded." *Gilette* 979 F.2d at 1349 (citing *McRae v. Shimoda*, 795 F.2d 780, 84 (9th Cir. 1986).). The Ninth Circuit established the elements that a plaintiff would have to show in order to evidence a custom through deliberate indifference:

> To impose liability on a local governmental entity for failing to act to preserve constitutional rights, a section 1983 plaintiff must establish: (1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that the policy "amounts to deliberate indifference" to the plaintiff's constitutional right; and (4) that the policy is the "moving force behind the constitutional violation."

*Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (quoting *City of Canton v. Harris*, 489 U.S. 378, 384-91 (1989). (citations omitted). What is at issue in this case is whether the policy exists and whether it amounts to deliberate indifference. The Ninth Circuit cautioned that "whether a local government entity has displayed a policy of deliberate indifference is generally a question for the jury." *Id.* at 1476. This does not mean, however, that summary judgment is never appropriate. The

Ninth Circuit has also held that "a plaintiff cannot prove the existence of a *municipal* policy or custom solely on the occurrence of a single incident of unconstitutional action by a non-policymaking employee." *Davis v. City of Ellensburg*, 869 F.2d 1230, 1233 (9th Cir. 1989) (emphasis in original) (citations omitted).

In this case Aaseby alleges no other incidents of unconstitutional action by City of Coeur d'Alene officials or police officers. Even taking the evidence in the light most favorable to Aaseby, which is to grant that the alleged excessive force is in fact a constitutional violation, Aaseby cannot show a genuine issue of material fact for trial. The only evidence that Aaseby offers to show other constitutional violations are "in the coffers of Plaintiff's counsel's client base […] [and] in the storehouses of the media and on the internet." (Plaintiffs' Brief in Opposition at 8.) This reference is not sufficient evidence. The Ninth Circuit in *Davis* directs the Court to grant a defendant's summary judgment motion when the only evidence of a policy of indifference is the plaintiff's own incident and other allegations supported by "scanty facts, little detail." *Davis* 869 F.2d at 1234.

Because Aaseby offers no evidence of a municipal policy or custom explicit or otherwise that the City of Coeur d'Alene or Chief of Police Longo affirmed, promulgated or were indifferent to, they retain their immunity from suit. There is no genuine issue of material fact that would warrant a trial on this claim and Defendants are entitled to summary judgment.

## CONCLUSION

The Defendant Officers involved in the arrests of Aaseby are entitled to qualified immunity from suit because they had probable cause to arrest Aaseby. Aaseby's malicious prosecution claim fails for the same reason. Defendant Officers (Sterling, Rios and Neal) are not entitled to qualified immunity on the claim of excessive force because questions of fact remain with regards to whether the use of force was reasonable given Aaseby's undisputed disability and disputed allegations that officers, when informed of the disability, continued to apply or increase the amount of force. Aaseby

fails to demonstrate a genuine issue of material fact on his § 1985 claim because he cannot demonstrate that he is a member of a protected class for purposes of equal protection. The City of Coeur d'Alene and Chief of Police Longo are entitled to qualified immunity from suit because Aaseby has failed to allege any policy or custom that gave rise to the alleged constitutional violations.

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1) Defendants' Motion for Summary Judgment (Dkt. No. 18) is **GRANTED** with regards to the Plaintiff's § 1983 unlawful arrest and malicious prosecution claims against all parties, Plaintiff's § 1985 conspiracy claim, and all claims against the City of Coeur d'Alene, any of its offices or departments, and Police Chief Longo.

2) Defendants' Motion for Summary Judgment (Dkt. No. 18) is **DENIED** with regards to Plaintiff's excessive force claims against Officers Sterling, Rios and Neal.

3) The parties postponed their settlement negotiations until the Court ruled on the pending motions. Since the Court has now ruled, the parties are directed to contact Chief Magistrate Judge Dale's courtroom deputy to schedule a settlement conference. The trial date on the excessive force claims will be reset, if necessary, in the event settlement is unsuccessful.

DATED:  **July 9, 2010**

Honorable Edward J. Lodge
U. S. District Judge